# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                          **CRIMINAL ACTION**

**VERSUS**                                                                              **No. 09-138**

**JONATHAN BOLAR**                                                              **SECTION I**

## ORDER AND REASONS

Before the Court is a *pro se* motion[1] filed by petitioner, Jonathan Bolar ("Bolar"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government opposes petitioner's motion and requests that the Court deny it without an evidentiary hearing.[2] For the following reasons, the Court **DEFERS** ruling, pending an evidentiary hearing, as to the claim that defendant's counsel was ineffective for failing to advise defendant of a plea offer and for failing to advise defendant correctly relative to his sentencing exposure. With respect to petitioner's other claims, the motion is **DENIED IN PART** and **GRANTED IN PART**.

The Court assumes familiarity with the background of the case. *See United States v. Bolar*, 483 F. App'x 876, 877 (5th Cir. 2012).

## STANDARD OF LAW

### I. Overview of § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United

---

[1]R. Doc. No. 166.
[2]R. Doc. No. 179, at 1.

States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426-27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)). Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar

the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see, e.g.*, *United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

## II. Ineffective Assistance of Counsel

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court articulated a two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697.

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance. This requires "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687). The petitioner must show that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. A petitioner who pleaded guilty must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The petitioner must satisfy both prongs of the Strickland test in order to be successful on an ineffective assistance claim. *See Strickland*, 466 U.S. at 697. A court is not required to address these prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

## ANALYSIS

As to Ground 1, petitioner alleges ten forms of ineffective assistance of counsel.[3] Specifically, petitioner alleges that his counsel, Marion D. Floyd ("Floyd"), performed deficiently by: (1) advising him to reject a plea offer;[4] (2) advising him to admit to the income tax counts;[5] (3) misadvising him regarding his sentencing exposure;[6] (4) failing to renew a motion for a judgment of acquittal;[7] (5) failing to impeach Adonis Favorite;[8] (6) failing to investigate Adonis Favorite ("Favorite");[9] (7) failing to show that petitioner was functioning as a contractor rather than a politician;[10] (8) failing to request a good faith jury instruction;[11] (9) failing to object to an error in the pre-sentence investigation report ("PSR");[12] and (10) failing to provide effective assistance on

---

[3]R. Doc. No. 166, at 4.

[4]R. Doc. No. 166, at 21.

[5]R. Doc. No. 166, at 21.

[6]R. Doc. No. 166, at 25.

[7]R. Doc. No. 166, at 29.

[8]R. Doc. No. 166, at 29.

[9]R. Doc. No. 166, at 31-32.

[10]R. Doc. No. 166, at 34-35.

[11]R. Doc. No. 166, at 35.

[12]R. Doc. No. 166, at 36.

appeal.[13] As to Ground 2, petitioner alleges prosecutorial misconduct in the form of online comments by Jan Mann, a former Assistant U.S. Attorney ("AUSA").[14]

## I. Pretrial Ineffective Assistance.

Petitioner alleges that counsel was ineffective prior to trial insofar as counsel advised him "not to take a [plea] deal" pursuant to which petitioner would have received 12-18 months' imprisonment in exchange for pleading guilty to one count of failure to file income taxes and one count of wire fraud.[15] Petitioner additionally alleges that counsel misadvised him of his sentencing exposure, telling him that "he faced, at worst case, forty to forty-four months' imprisonment if he lost at trial."[16]

### A. Plea Offer Rejection

Petitioner has declared under penalty of perjury that in a meeting with Floyd, at which petitioner's friend was present, Floyd advised petitioner that Fred Harper ("Harper"), an AUSA, was offering a plea deal "for twelve to eighteen months' imprisonment for me to plead guilty to one count of failure to file income taxes, and one count of fraud by wire."[17]

The Court, like the government, focuses on whether *Strickland*'s prejudice prong is met with respect to this argument.

---

[13]R. Doc. No. 166, at 38.

[14]R. Doc. No. 166, at 40.

[15]R. Doc. No. 166, at 21.

[16]R. Doc. No. 166, at 25.

[17]R. Doc. No. 166, at 45. Petitioner has further declared that, at the same meeting, his counsel repeatedly told him not to "take the deal" because his "worse case scenario" if convicted after a trial was "forty to forty-four months' imprisonment." R. Doc. No. 166, at 45. This related contention will be analyzed with petitioner's sentencing exposure argument.

-5-

Where a defendant alleges that ineffective advice led to the rejection of a plea offer and a conviction at trial, the relevant prejudice is "having to stand trial." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that[: (1)] the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [(2)] that the court would have accepted its terms, and [(3)] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* "A reasonable probability means 'a probability sufficient to undermine confidence in the outcome.'" *Arnold v. Thaler*, 484 F. App'x 978, 982 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). "The standard 'is less than a preponderance of the evidence.'" *Id.* (quoting *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008)).

The government has submitted declarations by Harper and Floyd to the effect that "no 12-18 month plea deal, and indeed no plea offer whatsoever, was made or communicated to Bolar, who was determined to go to trial and had no interest in cooperation."[18] Moreover, Harper's declaration notes that, "[i]n view of my 30 years as an Assistant United States Attorney practicing in the Eastern District of Louisiana, I consider it highly improbable that either my Office would have agreed to propose, or a United States District Judge would have agreed to accept," such a plea offer.[19]

---

[18]R. Doc. No. 179, at 6; R. Doc. No. 179-1, at 2 (Harper Decl.) ("I did not conduct plea negotiations with Bolar or his counsel. . . . I do not recall any discussions among members of that trial team of a proposed plea offer by the government, much less any negotiated plea agreement."); R. Doc. No 179-2, at 3 (Floyd Decl.) ("I did not receive a plea offer . . . . There were no plea negotiations because Mr. Bolar was adamant that he wanted to go to trial.").

[19]R. Doc. No. 179-1, at 2-3.

-6-

The government's arguments generally bear on petitioner's credibility,[20] and the conflicting evidence before the Court requires an evidentiary hearing as to whether a plea offer was made and, if so, as to whether counsel's advice and actions relative to that plea offer prejudiced defendant. *See United States v. Dawes*, 480 F. App'x 788, 789-90 (5th Cir. 2012).[21] The Court **DEFERS** ruling on this argument pending an evidentiary hearing.

### B. Income Tax Counts

Petitioner contends that his counsel was ineffective for advising him to admit to the jury that he failed to file income tax returns.[22] According to petitioner, the fact that he was advised to admit guilt at trial with respect to the income tax counts highlights the deficient advice relative to the putative plea offer discussed above.[23] As noted, an evidentiary hearing will be held with respect to any such plea offer. However, to the extent that this presents a stand-alone claim, the Court finds that counsel did not perform deficiently in advising petitioner to admit guilt at trial as to the income tax counts. Counsel made a "strategic decision that it would be better for Mr. Bolar to admit those more easily proven counts at trial, as the best way to innoculate him on the tax counts and demonstrate" acceptance of responsibility, rather than to have petitioner come before the jury as a convicted felon (by pleading guilty before without a plea agreement).[24] Counsel's strategy was "well within the range of professionally reasonable judgments." *See Strickland* , 466 U.S. at 699.

---

[20] *See*, *e.g.*, R. Doc. No. 179, at 7 (urging the Court to consider its prior observations of petitioner's credibility).

[21] It is unclear whether the putative offer was pursuant to Rule 11(c)(1)© of the Federal Rules of Criminal Procedure. *See* R. Doc. No. 179, at 6 (noting that it appears petitioner is alleging the plea offer would be pursuant to Rule 11(c)(1)©.

[22] R. Doc. No. 166, at 9.

[23] R. Doc. No. 166, at 23.

[24] R. Doc. No. 179-2, at 6.

Moreover, petitioner has not indicated how this advice prejudiced him. Petitioner's request for relief is **DENIED** relative to this argument.

### C. Sentencing Exposure

Petitioner has declared under penalty of perjury that his counsel told him that his "worse case scenario" if convicted after a trial was "forty to forty-four months' imprisonment."[25] Counsel has submitted a sworn declaration stating that he never advised petitioner of a "worst case scenario" of 44 months, and that "it is not my practice to provide a client with a firm maximum sentencing exposure," but rather to "provide my best estimate, making clear that it is only an estimate."[26] Counsel asserts, in hindsight, that he would have estimated at least 10-12 years' imprisonment, and this "estimate would have changed as the evidence developed."[27] Ultimately, petitioner's guideline range after trial was 121-151 months, and the Court varied upward in imposing a sentence of 204 months in prison. *See Bolar*, 483 F. App'x at 884.

With respect to this argument, the government continues to rely on attacks on petitioner's credibility.[28] "An evidentiary hearing will confirm or dispel [petitioner's] allegation that his attorney misrepresented the prison time he faced and whether [petitioner] relied on those misrepresentations" in rejecting the Government's plea offer" and proceeding to trial. *United States v. Herrera*, 412 F.3d 577, 582 (5th Cir. 2005); *see also Dawes*, 480 F. App'x at 789-90.[29]   Such a hearing will further

_____

[25]R. Doc. No. 166, at 45.

[26]R. Doc. No. 179-2, at 4.

[27]R. Doc. No. 179-2, at 4.

[28]R. Doc. No. 179, at 11-12.

[29]The Court notes that, insofar as any pretrial estimate would have failed to account for the revelation at trial that Favorite perjured herself before the grand jury at petitioner's request, such a failing hardly constitutes ineffective assistance. *See* R. Doc. No. 179, at 11 ("Bolar does not suggest how his own counsel could have predicated Bolar's future lies and obstruction of justice and

address, if necessary, whether there is a reasonable probability that, "had he been properly advised, he would have pleaded guilty and a guilty plea would have resulted in a lesser sentence." *See United States v. Moore*, 416 F. App'x 454, 458 (5th Cir. 2011). The Court **DEFERS** ruling on this argument.

## II. Ineffective Assistance At Trial

Petitioner alleges that counsel was ineffective for failing to renew an oral motion for a judgment of acquittal with respect to counts 1-4, as the government allegedly did not prove that petitioner's conduct satisfied the interstate commerce element of these counts.[30] Petitioner additionally alleges that counsel's failure to impeach Favorite constituted ineffective assistance[31] and that, relatedly, counsel's failure to investigate Favorite's potential trial testimony constituted ineffective assistance.[32] Petitioner also alleges deficient performance insofar as counsel failed to request a good faith defense jury instruction.[33]

### A. Motion for Judgment of Acquittal

Petitioner contends that counsel was ineffective for failing to move for a judgment of acquittal on counts 1-4, relative to the insufficiency of the evidence supporting the interstate commerce element of these extortion counts.[34] Petitioner specifically argues that, although counsel submitted a "generic argument" in support of an oral motion for a judgment of acquittal at the close

---

considered this in advising on potential guidelines.").

[30]R. Doc. No. 166, at 27.

[31]R. Doc. No. 166, at 29.

[32]R. Doc. No. 166, at 31.

[33]R. Doc. No. 166, at 35.

[34]*See* R. Doc. No. 87, at 1-4; R. Doc. No. 166, at 27.

of evidence, counsel did not renew this motion.[35] Accordingly, the Fifth Circuit considered the sufficiency of the evidence argument pursuant to the plain error standard. *Bolar*, 483 F. App'x at 881.

Petitioner's argument fails with respect to counts 1-3 because he cannot show prejudice: the Fifth Circuit concluded that there was "sufficient evidence to support the interstate commerce element" with respect to these counts, *id.* at 882, and the Court concludes that there is no reasonable probability of a different verdict with respect to these counts. Count 4 requires closer scrutiny.

### 1. Deficient Performance

The Fifth Circuit determined that the stipulation entered into by the government and petitioner, which was intended to satisfy the interstate commerce element of counts 1-4, did not adequately do so. *Id.* According to the government: "That all experienced criminal litigators in this case failed to find fault in the stipulation is itself dispositive as to whether defense counsel fell below an objective standard of reasonableness."[36] The Court is unpersuaded by this conclusory argument.[37] Moreover, the Court notes that the government has not identified any evidence that it *could* have presented to satisfy the interstate commerce element of count 4 and that would explain defense counsel's willingness to enter into a stipulation.

While "counsel may decide, for strategic reasons, not to object to an obvious error," the deficient performance in this case can only be attributed to inadvertence. *See Gordon v. United*

---

[35]R. Doc. No. 166, at 29; *see also* R. Doc. No. 147, at 739-40 (denying motion).

[36]R. Doc. No. 179, at 13.

[37]Based on the analysis below, "counsel and the trial court should have recognized" this error. *See United States v. Delgado*, 672 F.3d 320, 329, 332 & n.12 (5th Cir. 2012) (en banc).

*States*, 518 F.3d 1291, 1300 (11th Cir. 2008). "[E]ven if [an alleged error] is inadvertent," rather than strategic, however, "relief is not automatic." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

Generally speaking, § 2255 cases in which the failure to renew a motion for judgment of acquittal is alleged to constitute deficient performance have turned on *Strickland*'s prejudice prong, rather than its deficient performance prong. *See, e.g.*, *United States v. Cole*, 262 F.3d 704, 710 (8th Cir. 2001) (concluding that failure to renew such a motion did not prejudice the defendant); *United States v. Willis*, 38 F.3d 170, 178-79 n.10 (5th Cir. 1994) (same).

The Court need not determine whether a failure to renew a motion for judgment of acquittal as to a meritorious argument always constitutes deficient performance. *Cf. United States v. Quintero-Barraza*, 78 F.3d 1344, 1351 (9th Cir. 1995) (briefly concluding that, while "non-strategic," counsel's failure to renew a motion for judgment of acquittal did not "rise to the level of ineffectiveness" or prejudice defendant). In this particular case, the Court concludes that counsel performed deficiently in committing a chain of related errors as to count 4: first, in agreeing to stipulate to an element of the offense for which there was no evidence; second, in not realizing during trial that the stipulation was deficient; and third, in not renewing the motion for a judgment of acquittal in light of the fact that no evidence had been produced at trial to otherwise support the interstate commerce element of count 4, as discussed below. Having determined that counsel's performance was deficient, the Court turns to whether petitioner has shown a reasonable probability of a different verdict.

### 2. Prejudice

Reviewing for plain error, the Fifth Circuit examined the record to determine whether the interstate commerce element of counts 1-4 was met. *Bolar*, 483 F. App'x at 881-82.[38] The Fifth Circuit observed that the stipulation entered into by the government and petitioner did not "necessarily satisfy the interstate commerce element" of counts 1-4. *Id.* The court concluded, however, that other evidence in the record supported a finding as to the interstate commerce element relative to counts 1-3. *Id.* at 882.

With respect to count 4, which involved "Bolar's demand from Trinise Forges of $2,500 to obtain a variance for a concrete slab," the Fifth Circuit observed that "[n]o evidence was presented that Forges was directly and customarily engaged in interstate commerce, or that the extortion affected an entity engaged in interstate commerce." *Id.* at 882. In affirming all of the extortion convictions, the Fifth Circuit held, "After agreeing that the interstate commerce element had been satisfied [by the stipulation], the defendant cannot now argue that the government's failure to produce evidence as to that element constituted a manifest miscarriage of justice. The defendant has not shown that the extortion convictions were a manifest miscarriage of justice." *Id.*

In reaching this conclusion, the Fifth Circuit applied a four-pronged standard for plain error review:

First, there must be an error or defect. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected

---

[38]"In order to satisfy the interstate commerce requirement, the government must show either that (1) the victim is directly and customarily engaged in interstate commerce and the extortion depletes his assets; (2) the extortion causes or creates the likelihood that the victim will deplete the assets of an entity engaged in interstate commerce[;] or (3) the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce." *Bolar*, 483 F. App'x at 881 (quotation omitted). "[E]ach Hobbs Act violation must cause interference with interstate commerce; it is not sufficient to show that interstate commerce was somehow implicated in the course of events." *United States v. Mann*, 493 F.3d 484, 496 (5th Cir. 2007).

the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Delgado*, 672 F.3d at 329 (quotation omitted). The fourth prong has also been formulated as a "miscarriage of justice" inquiry. *Id.* at 330. The standards underlying the fourth prong, which was the basis for the Fifth Circuit's holding as to count 4, are "only applicable when the first three prongs of the test have been satisfied—they are not *alternatives* to the full four-prong test." *Id.* at 330. In short, by proceeding to the discretionary miscarriage of justice inquiry, the Fifth Circuit indicated that the other three prongs were met with respect to count 4.[39]

The U.S. Supreme Court has held that *Strickland*'s requirement for prejudice is equivalent to the "affecting substantial rights" requirement in the plain error context. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (applying *Strickland* prejudice standard to the "affecting substantial rights" inquiry in the context of plain error); *see also Close*, 679 F.3d at 720 ("[The] standard for prejudice under *Strickland* is virtually identical to the showing required to establish that a defendant's substantial rights were affected under plain error analysis.") (quotation omitted). Both require a showing that there is a "reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Dominguez Benitez*, 542 U.S. at 83 (quotation omitted).

---

[39]In order "to satisfy the second prong of the plain-error test, [petitioner must have] demonstrate[d] not just that the government's evidence [] was insufficient, but that it was *obviously* insufficient." *Delgado*, 672 F.3d at 331. Put differently, the second prong requires "error so clear and obvious that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *Id.* at 330 (quotation omitted). Notwithstanding this strict articulation of the standard for the second prong, persuasive authority suggests that not every plain error constitutes deficient performance. *See Close v. United States*, 679 F.3d 714, 720 & n.4 (8th Cir. 2012) (citing *Smith v. McKee*, 598 F.3d 374, 383-84 (7th Cir. 2010); *United States v. Hurt*, 527 F.3d 1347, 1357 (D.C. Cir. 2008)); *Gordon*, 518 F.3d at 1300.

The fact that Bolar's substantial rights were affected as to count 4 indicates that *Strickland*'s prejudice requirement has been met.

The government contends that "it is improbable that an appellate court would affirm a conviction if an element of the crime is missing under any standard of review. The Fifth Circuit does not affirm non-crimes, even when a defendant swears to his guilt in a plea colloquy."[40] The Court will not second-guess the Fifth Circuit's exercise of its discretion or impute to it a rationale other than the one set forth in its opinion. Unlike the Fifth Circuit's plain error analysis, this Court's *Strickland* analysis does not permit a discretionary review for a miscarriage of justice once deficient performance and a reasonable probability of a different verdict have been shown. *E.g.*, *Massaro*, 538 U.S. at 505 (citing *Strickland*, 466 U.S. 668). Significantly, the government has not identified *any* evidence (or legal argument) potentially overlooked by the Fifth Circuit that would satisfy the interstate commerce element of count 4.

Petitioner's conviction with respect to count 4 is **VACATED** because he has shown deficient performance and prejudice with respect to that count. No resentencing hearing is necessary, as defendant's 132-month sentence as to count 4 ran concurrent to his other sentences, including his 132-month sentences for counts 1-3.[41] *See United States v. Hann*, 849 F.2d 932, 933 (5th Cir. 1988) ("The sentence on the reversed count having been concurrent with the sentence on the affirmed count, we need not remand for resentencing."); *see also United States v. Alanis*, No. 99-20153, 2000 WL 1597957, at *2 (5th Cir. Sept. 25, 2000).[42] The Court will enter an amended judgment.

---

[40]R. Doc. No. 179, at 13 (citing *United States v. Reasor*, 418 F.3d 466, 473 (5th Cir. 2005)).

[41]R. Doc. No. 133, at 2; R. Doc. No. 153, at 29.

[42]To be clear, the Court would have imposed the same sentences for counts 1-3 and 5-13 even if it had not taken into account petitioner's conviction pursuant to count 4.

### B. Failure to Investigate or Impeach Favorite

Petitioner alleges that counsel would not have called Favorite to testify if he had properly investigated her, because he would have been aware of her change in testimony.[43] Petitioner additionally alleges that, after Favorite's testimony began, counsel should have impeached Favorite on the basis that petitioner's wife was going to hire Favorite as a manager, but later chose not to, after discovering that Favorite had an affair with petitioner's wife's brother-in-law.[44] Petitioner asserts that he conveyed this information to counsel during a thirty-five minute recess in Favorite's testimony.[45]

While defense counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers," *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980), an attorney's failure to investigate the case against the petitioner and to interview witnesses can support a finding of ineffective assistance, *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted); *see also United States v. Goodley*, 183 F. App'x 419, 422-23 (5th Cir. 2006) (citing *Green*, 882 F.3d at 1003).

With respect to investigating Favorite, the Court does not consider trial counsel's failure to meet with Favorite to review her potential testimony deficient performance. The uncontroverted evidence shows that counsel took into account that the government had not called Favorite, that she had met with petitioner's former attorney and given a favorable statement, and that she had provided

---

[43]R. Doc. No. 166, at 34-35.
[44]R. Doc. No. 166, at 29-30.
[45]R. Doc. No. 166, at 29, 46.

favorable grand jury testimony.[46] On cross-examination, petitioner challenged the government's failure to call Favorite as a witness and suggested that he was confident that she would confirm his version of events, remarking, under oath, "Why don't you get her in here? . . . I'd rather have her in here."[47] Accordingly, calling Favorite, notwithstanding the fact that her grand jury testimony had not been subsequently discussed with her by petitioner's trial counsel, reflected an "informed strategic choice," partially based on "information supplied by defendant." *Smith v. Scott*, No. 93-1637, 1994 WL 558937, at *3  (5th Cir. Sept. 30, 1994) (citing *Strickland*, 466 U.S. at 691); *see also Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000); *United States v. Hernandez*, No. 89-7725, 1990 WL 125519, at *7 (4th Cir. Sept. 19, 1990).

With respect to impeachment, Floyd explains in his affidavit that his focus was on "bringing to the jury's attention Ms. Favorite's numerous, admittedly false statements."[48] The Court agrees with the government that, "[i]n view of the unfolding events with Favorite's testimony, defense counsel's focus on impeaching Favorite with her prior testimony and affidavit was an objectively reasonable trial strategy, even assuming Bolar mentioned the affair during the break."[49]

Finally, the Court notes the ludicrousness of petitioner's prejudice argument. As set forth by the government, "Bolar's hindsight assumption that he might have received a lighter sentence because some of his post-indictment crimes would be hidden from the Court is not a basis for § 2255

---

[46]R. Doc. No. 179-2, at 6. Although petitioner contends that Favorite "standing or sitting with assistant United States Attorneys on two separate occasions during trial" was an "obvious red flag[],"this contention relies on hindsight; he does not suggest that there was any indication to petitioner or counsel that this conduct boded poorly for petitioner, especially in light of the fact that the government did not call Favorite as a witness, at the time of trial. *See* R. Doc. No. 166, at 34.

[47]R. Doc. No. 147, at 1036.

[48]R. Doc. No. 179-2, at 7.

[49]R. Doc. No. 179, at 14.

-16-

relief."[50]  *See also Nix v. Whiteside*, 475 U.S. 157, 176 (1986) (holding that counsel's failure to present perjured testimony does not prejudice a defendant). Petitioner's request for relief on this basis is **DENIED**.

### C. Functioning as a Contractor

Petitioner contends that counsel was ineffective for failing to show that petitioner was functioning as a contractor, rather than as a politician.[51] In particular, petitioner contends that counsel "presented no witnesses to show Movant was functioning as a contractor, and only asked one defense witness if she was 'aware that Movant was a contractor.'"[52] However, petitioner does not identify any potential evidence that his counsel ignored, and counsel's inability to persuade the jury that petitioner was not guilty does not amount to ineffective assistance. As the Fifth Circuit observed, "the record is replete with evidence showing that Bolar acted under color of his position as a Gretna city councilman to obtain or attempt to obtain money. He repeatedly identified himself as a city councilman and explicitly referred to his power as a government official in his conversations with each of the four victims." *Bolar*, 483 F. App'x at 881. In addition, as established by counsel's affidavit, during cross-examination, he "emphasized, where appropriate, the instances when Mr. Bolar had completed legitimate work as a contractor."[53] Accordingly, petitioner's request for relief on this basis is **DENIED**.

### D. Good Faith Defense Jury Instruction

---

[50]R. Doc. No. 179, at 11.

[51]R. Doc. No. 166, at 34-35.

[52]R. Doc. No. 166, at 34.

[53]R. Doc. No. 179-2, at 6.

Petitioner contends that counsel was ineffective for failing to request a good faith defense jury instruction relative to the wire fraud counts (counts 5 and 6).[54] The Court agrees with the government,[55] however, that the failure to do so does not constitute ineffective assistance because the concept of good faith was "adequately explained" through the definitions of the requisite mens rea. *See United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998). "Regardless of whether the evidence supported the defense of good faith, the court's definition of specific intent required the jury to consider any good faith [defendant] may have demonstrated before finding him guilty of wire fraud." *United States v. St. Gelais*, 952 F.2d 90, 93 (5th Cir. 1992).[56] Accordingly, "trial counsel's failure to request an unnecessary [good faith] instruction was not unreasonable or prejudicial." *See United States v. Shetty*, 76 F. App'x 842, 845 (9th Cir. 2003). Petitioner's request for relief based on a good faith defense jury instruction is **DENIED**.

## III. Ineffective Assistance at Sentencing

Petitioner contends that counsel rendered deficient performance by failing to object to an error in the PSR, which ultimately resulted in a guidelines range of 121-151 months' imprisonment rather than 97-121 months' imprisonment.[57] He additionally contends that he did not receive the PSR addenda until the day of sentencing, and that his counsel did not act on petitioner's request for a

---

[54]R. Doc. No. 166, at 35.

[55]R. Doc. No. 179, at 17-18.

[56]Counts 5 and 6 required a finding that petitioner acted knowingly and with a specific intent to defraud. "Knowingly" was defined to mean "that the act was done voluntarily and intentionally, not because of mistake or accident." R. Doc. No. 101-4, at 26. "Specific intent to defraud" was defined as "a conscious knowing intent to defraud. An intent to defraud means an intent to deceive or cheat someone." R. Doc. No. 101-4, at 26.

[57]R. Doc. No. 166, at 37.

continuance.[58] The Court construes these additional allegations to suggest that, had petitioner

received the PSR, he would have called the error to counsel's attention.[59]

Counsel avers that he provided petitioner with the PSR promptly and reviewed it with him.[60]

Moreover, counsel asserts that, after sentencing had been continued twice, petitioner did not ask

again for a continuance.[61]

The Fifth Circuit first noted an error in the PSR:

> Review of the guidelines calculation does reveal an error in the extortion value used
> to determine the guidelines range. The probation officer entered a contract price
> between Warburton and Bolar of $97,000. According to Warburton's testimony, the
> contract price was in fact $92,500. That $4,500 difference affected the guidelines
> calculation. The appellant did not raise that issue on appeal, though, and we are not
> obliged to raise it *sua sponte*. *See United States v. Thames*, 214 F.3d 608, 612 n.3
> (5th Cir. 2000) (issues not briefed are waived).

*Bolar*, 483 F. App'x at 883 n.3 (5th Cir. 2012). The government contends that the error relative to

the loss amount was not a result of deficient performance because no one, including "the probation

officer, the prosecution team, nor this Court caught the difference."[62] While the Court doubts that

this simple error constitutes deficient performance, the Court need not decide that issue because

petitioner was not prejudiced by the error. *See Herrera*, 412 F.3d at 582.

---

[58]R. Doc. No. 166, at 36.

[59]Petitioner has not identified any prejudice associated with the alleged delay in his review
of the PSR, so this allegation, taken in isolation, does not entitle him to relief.

[60]R. Doc. No. 179-2, at 7.

[61]R. Doc. No. 179-2, at 7.

[62]R. Doc. No. 179, at 19. The Court is not convinced that the sheer fact that no one "caught"
an error indicates that counsel acted reasonably. *See also United States v. Curtis*, 360 F. App'x 413,
414-15 (4th Cir. 2010) (remanding for resentencing because of error in guidelines calculation).

Petitioner correctly observes that the loss calculation error increased petitioner's imprisonment guidelines range from 97-121 months to 121-151 months.[63] The government contends that petitioner "cannot establish prejudice because this Court made clear that it was issuing a non-guidelines sentence under 3553(a)," and specifically listed "significant reasons" supporting that sentence.[64]

Petitioner highlights that the Court imposed a non-guidelines sentence of 204 months, and argues that, had the upper limit of the guidelines been 121 months, he would have received a 174-month sentence.[65] As petitioner acknowledges, his approach assumes a formulaic relationship between the guidelines and sentencing by which the Court would add 53 months to the upper guideline limit.[66] However, this was not the Court's approach. The Court easily concludes, based on its thorough familiarity with the facts of the case and petitioner's sentencing, that the same sentence would have been imposed even if petitioner's guideline sentence were lower. *Cf. United States v. Smith,* 454 F. App'x 260, 261-62 (5th Cir. 2011) (remanding for resentencing and noting that "there is no indication—based on the record or the reasons given by the district court at sentencing—that the district court intended to impose anything other than a guideline sentence").

The Court's sentence was supported by numerous factors, which were generally focused on Bolar's conduct before and during trial. As the Fifth Circuit summarized, "The district court provided a lengthy explanation for the variance, noting the gravity of the multiple obstructions, Bolar's persistent attempts to undermine and subvert the investigative and judicial process, and that

---

[63]R. Doc. No. 166, at 37.

[64]R. Doc. No. 179, at 19.

[65]R. Doc. No. 166, at 37-38.

[66]R. Doc. No. 166, at 38 & n.2.

-20-

his testimony was 'replete with blatant lies.' The court stated that Bolar's 'use of extortion . . . was blatant and pervasive,' and emphasized the 'immorality and depravity' of stealing from a church and from his friends." *Bolar*, 483 F. App'x at 884. Petitioner's request for relief on this basis is **DENIED**.

## IV. Ineffective Assistance on Appeal

With respect to claims that appellate counsel provided ineffective assistance, "[c]ounsel does not need to raise every nonfrivolous ground of appeal. Nonetheless, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *United States v. Williamson,* 183 F.3d 458, 462-63 (5th Cir. 1999) (quotations omitted).

Petitioner contends that he received ineffective assistance on appeal because, "[i]nstead of researching Movant's case, Counsel copied a motion" that had been prepared by petitioner.[67] The evidence submitted by petitioner demonstrates, however, that he and counsel communicated about the substance of the brief.[68] The fact that petitioner argues that he played too great of a role in the brief's preparation, rendering counsel's performance deficient, is unpersuasive. *See also Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) ("Counsel is not deficient for failing to raise every meritorious claim that may be pressed on appeal.").

Moreover, petitioner has not identified how counsel's alleged deficient performance prejudiced him.[69] While petitioner blames his counsel for not "argu[i]ng plain error review in any

---

[67]R. Doc. No. 166, at 39-40.

[68]R. Doc. No. 166, at 47, 51.

[69]The Court notes that, contrary to petitioner's contention, he did not identify the PSR's error relative to the extortion amount in his pro se appellate brief. *See* R. Doc. No. 166, at 40, 225.

fashion" with respect to his sufficiency of the evidence argument,[70] the plain error standard of review with respect to that issue arose from counsel's actions during the trial. *See Bolar*, 483 F. App'x at 881. With respect to counsel's failure to raise the loss amount issue,[71] such failure did not prejudice petitioner for the reasons described above. *See Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991) ("When it comes to a counseled appeal after conviction, . . . the key is whether the failure to raise an issue worked to the prejudice of the defendant.").

Petitioner cannot establish deficient performance or prejudice with respect to this argument. Petitioner's request for relief with respect to this argument is **DENIED**.

## V. Prosecutorial Misconduct

Petitioner alleges that then-AUSA Jan Mann's "blogging" about his case prejudiced his trial by influencing jurors and potential witnesses.[72] He identifies no evidence to support this conclusory assertion, nor does he identify how the misconduct prejudiced the impartiality of the jury or the integrity of its verdict.[73] Petitioner's request for relief based on prosecutorial misconduct is **DENIED**.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the Court **DEFERS** ruling pending an evidentiary hearing as to the claim that defendant's counsel was ineffective for failing to advise defendant of a plea offer and for failing to advise defendant correctly relative to his sentencing exposure.

---

[70]R. Doc. No. 166, at 39-40.

[71]*See* R. Doc. No. 166, at 40.

[72]R. Doc. No. 166, at 40-42.

[73]While arguing that witnesses were exposed to media coverage related to his trial, petitioner does not connect such coverage with Jan Mann's actions. R. Doc. No. 166, at 41-442.

-22-

**IT IS FURTHER ORDERED** that a status conference is scheduled for **Thursday, June 26, 2014**, **at 10:00 a.m.** to discuss the date of the evidentiary hearing.

**IT IS FURTHER ORDERED** that the Federal Public Defender is enrolled as counsel of record to assist petitioner with the evidentiary hearing. Appointed counsel shall confer with petitioner to determine whether he prefers to proceed *pro se*, to privately retain counsel, or to retain appointed counsel.

**IT IS FURTHER ORDERED** that petitioner's motion is **GRANTED IN PART** and that his conviction for the offense charged in count 4 is **VACATED**. An amended judgment will be entered.

**IT IS FURTHER ORDERED** that the motion is **DENIED** in all other respects.

New Orleans, Louisiana, June 16, 2014.


**LANCE M. AFRICK**
**UNITED  STATES  DISTRICT  JUDGE**