UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 09-138 |
| JONATHAN BOLAR | SECTION "F" (3) |

REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255. [Doc. #166]. On December 16, 2014 and January 9, 2015, this Court held an evidentiary hearing on the motion. Present on both dates were Michael Fawer on behalf of defendant, and Daniel Friel on behalf of the government. After the January 9, 2015 hearing, the Court ordered the parties to file post-hearing memoranda no later than March 6, 2015. Defendant moved for an extension of time to file, which was granted. He then filed his post-hearing memorandum on March 6, 2015, and the government filed its post-hearing memorandum on March 16, 2015.[1] Having reviewed the motion, the pleadings, the pre- and post-hearing memoranda, and the case law, the Court rules as follows.

---

[1] Daniel Friel had by March 6, 2015 left the government's employ, and there was some confusion as to who had replaced him in this case. The Court thus allowed the government until March 16, 2015 to file its post-hearing memorandum.

**I.     Background**

A jury convicted former Gretna, Louisiana city councilman Jonathan Bolar on four counts of extortion, two counts of wire fraud, four counts of failure to file a tax return, and three counts of structuring financial transactions to evade reporting requirements. The District Court sentenced Bolar to 204 months in prison, three years of supervised release, $134,732 in restitution to the Internal Revenue Service ("IRS"), and $39,350 in restitution. The 204-month term of imprisonment included an upward departure from the alleged Guidelines range of 121 to 152 months.

Bolar appealed, and the Fifth Circuit upheld the conviction and sentence. The United States Supreme Court denied certiorari. On January 8, 2014, Bolar filed the instant motion, challenging his sentence. The original District Court granted the motion in part, vacating Bolar's conviction under Count 4. With regard to all other claims, the District Court denied the motion. However, it also deferred ruling on two of Bolar's claims pending an evidentiary hearing: (1) whether defense counsel was ineffective for failing to advise Bolar of a plea offer; and (2) whether defense counsel was ineffective for failing to correctly advise Bolar relative to his sentencing exposure. [Doc. #182].

The District Court then recused itself [Doc. #202], and the case was transferred to the above-captioned division. On August 28, 2014, the subsequent District Court referred the deferred rulings from the earlier order on the motion to vacate to this Court for an evidentiary hearing. [Doc. #212]. As noted, on December 16, 2014 and January 9, 2015, this Court held the evidentiary hearing. The relevant testimony will be outlined below in tandem with the parties' arguments and the relevant case law.

**B.     The Parties' Contentions**

    **A.     The Motion to Vacate**

Bolar first contends that counsel was ineffective for advising him to reject a plea offer. He maintains that Assistant United States Attorney ("AUSA") Fred Harper offered him a plea of 12 to 18 months imprisonment should he plead guilty to two counts of his indictment, failing to file an income tax return and wire fraud. He argues that counsel advised him to reject the plea offer but then asked him to admit guilt on the stand for failure to file tax returns, which he did. Bolar maintains that he would have accepted the plea offer had he known of his potential sentence. He contends that there is a reasonable probability that the District Court would have accepted the terms of the plea agreement. Bolar asserts that the District Court upwardly departed from the Guidelines range based on his own admissions and testimony at trial, and, had he accepted the plea offer, the District Court would not have heard such testimony.

As noted, Bolar also contends that counsel was ineffective for failing to advise him of his potential sentencing exposure. He argues that counsel advised him that he faced 40 to 44 months imprisonment if he lost at trial. Bolar maintains that under the Sentencing Guidelines, he faced at least 63 to 78 months imprisonment.

Bolar also raises numerous other issues as to why counsel was ineffective but these are now foreclosed by the District Court's earlier opinion.

### B. Bolar's Pre- and Post-Hearing Memoranda

In his pre-hearing memoranda, Bolar notes that he met twice with law enforcement officers at FBI headquarters, one pre- and one post-indictment. He maintains that law enforcement was interested in his cooperation in an ongoing corruption investigation of prominent Jefferson Parish officials. At the second meeting, Bolar alleges that he asked Harper what cooperation would mean, and Harper "told him to look at Ellenese Brooks-Sims," who received an 18-month sentence in

exchange for her cooperation against Mose Jefferson. Bolar maintains that after that meeting, another government attorney proposed a plea offer that involved pleading guilty to one felony count of fraud and one misdemeanor count of failure to file income tax returns. Bolar argues that he rejected both offers on the bad advice of counsel.

In his post-hearing memorandum, Bolar outlines the testimony from the evidentiary hearing that he contends supports his arguments. Said evidence will be outlined below. He also advances numerous arguments in support of his two claims that are detailed below in the analysis section of this report and recommendation.

### C. The Government's Pre- and Post-Hearing Memoranda

The government notes that it has submitted the sworn statements of both Harper and counsel for Bolar, Marion Floyd, who affirmatively state that no plea offer of any kind was ever made to Bolar. Because there is no corroborated proof of the existence of a formal plea offer, the government maintains that Bolar can not meet his burden here, and the Court need not reach the ineffective-assistance-of-counsel analysis as outlined in *Lafler v. Cooper*, – U.S. –, 132 S. Ct. 1376 (2012).

As did Bolar, the government outlines the testimony from the evidentiary hearing that it argues supports its position. The Court will review such evidence below.

### III. Law and Analysis

#### A. 28 U.S.C. § 2255

Section 2255(a) provides a prisoner in custody with four grounds on which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence

was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426-27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson,* 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)). Pursuant to Section 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a Section 2255 proceeding. *Massaro*, 538 U.S. at 509; *see United States v. Johnson*, 124 Fed. Appx. 914, 915 (5th Cir. 2005).

### B.     The First Ineffective-Assistance-of-Counsel Claim

Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Missouri v. Frye*, – U.S. –, 132 S. Ct. 1399, 1405 (2012); *see also Padilla v. Kentucky*, 559 U.S. 356, 372-73 (2010). During plea negotiations defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Hill v. Lockhart*, the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). The performance prong of *Strickland* requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Id.* at 57 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

To establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In the context of pleas, a defendant must show that the outcome of the plea process would have been different with competent advice. *Frye*, 132 S. Ct. at 1409-10 (noting that *Strickland*'s inquiry, as applied to advice with respect to plea bargains, turns on "whether 'the result of the proceeding would have been different'" (quoting *Strickland*, 466 U.S. at 694); *see also Hill*, 474 U.S. at 59 ("The . . . 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). In *Hill*, when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Supreme Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.*

In contrast to *Hill*, here, the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances, a defendant must show that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the district court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the district court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms, would have been less severe than under the judgment and sentence that in fact were imposed. As the Supreme Court recognized in *Lafler*, this is consistent with the test adopted and applied by other appellate courts without demonstrated difficulties or systemic disruptions. 132 S.Ct. at 1385; *see also United States v. Rodriguez Rodriguez*, 929 F.2d 747, 753, n.1 (1st Cir. 1991) (per curiam); *United States v. Gordon*, 156 F.3d 376, 380-381 (2nd Cir. 1998) (per curiam); *United States v. Day*, 969 F.2d 39, 43-45 (3d Cir. 1992); *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981); *Julian v. Bartley*, 495 F.3d 487, 498-500 (7th Cir. 2007); *Wanatee v. Ault*, 259 F.3d 700, 703-04 (8th Cir. 2001); *Nunes v. Mueller*, 350 F.3d 1045, 1052-53 (9th Cir. 2003); *Williams v. Jones*, 571 F.3d 1086, 1094-5 (10th Cir. 2009) (per curiam); *United States v. Gaviria*, 116 F.3d 1498, 1512-1514 (D.C. Cir. 1997) (per curiam).

At the evidentiary hearing, Bolar testified and called four witnesses: Derrick Shepherd, his original counsel Clarence Roby, his trial counsel Marion Floyd, and Karen Bolar, his wife. The Court outlines the ***relevant*** testimony of each witness below.

      **1.**    **Derrick Shepherd**

Derrick Shepherd, a friend of Bolar and a former public official convicted of money laundering, testified that on three occasions in 2009, he had conversations with Jonathan Bolar with

respect to the merits of cooperation with the government and pleading guilty. See Evidentiary Hearing Transcript ("Transcript"), 12/16/14 at pp. 13, 23, 27.[2] Shepherd testified that while he spoke to Bolar with the government's knowledge and consent, he did not approach Bolar with any actual or perceived authority and did so, in part, for his own benefit, with the hope of accruing some reduction in his own possible prison sentence. *Id.* at pp. 31, 32. Significantly, Shepherd testified, and Bolar later agreed, that the last meeting and conversation between Shepherd and Bolar occurred ***before*** the meeting between Bolar and the government in which Bolar alleges that the government made the alleged plea offer in question. *Id.* at pp. 13, 23, 27. Shepherd also stated that at no time did Bolar indicate either his culpability of the underlying corruption charges or that he was willing to accept responsibility and plead guilty. *Id.* at 32.

It appears to the Court that Bolar called Shepherd to bolster his contention that the government sought Bolar's cooperation in other investigations into public corruption. However, the government has never denied – and indeed conceded as much at the hearing – that it sought Bolar's cooperation. Even the District Court had earlier found that whether or not the government desired Bolar's cooperation in other investigations is entirely irrelevant to an evaluation of whether or not the government made the plea offer to Bolar. Doc. #211 at p. 9; Doc. #224 at p. 9. On Bolar's motion to compel and on his motion for reconsideration of the denial of that motion to compel, the District Court noted that Bolar had failed to identify how documents that revealed the government's interest in and desire for Bolar's cooperation ever manifested in an actual plea offer from the government to Bolar's trial counsel. Doc. #211 at p. 9. The District Court noted that Bolar must

---

[2] The transcripts of the evidentiary hearing will ultimately be filed into the record, but as of the date of this report and recommendation, the parties have not paid their invoices for the transcripts, and the court reporter has thus not filed them into the record.

demonstrate that a plea deal existed before the Court can even conduct the *Lafler* analysis. And this, as the Court finds below, he has not done.

Bolar makes much of Shepherd's testimony from his first two meetings with the FBI agents that they had mentioned to Shepherd that – at the first meeting – a sentencing range of 18 to 24 months was possible and then – at the second meeting – 24 months was possible. *Id.* at pp. 12, 24-25. But Bolar stipulated – and it is well established that – FBI agents do not have the "final call" in the terms of plea deals that are offered by the government. *Id.* at p. 34. Moreover, Shepherd testified that he never approached Bolar with a plea agreement or a factual basis. *Id.* at p. 31. And while Shepherd may have testified that the two-year offer was ultimately taken off the table but that Bolar could still receive less time by pleading guilty than by going to trial, *id.* at p. 27, it is undisputed that Shepherd had no authority from the government to offer Bolar anything.

Shepherd's testimony adds nothing to the Court's consideration of whether the government made a bona fide plea offer to Bolar of 18 to 24 months in exchange for his guilty plea and whether trial counsel advised Bolar to go to trial. *Id.* at 34.

        **2.**      **Clarence Roby**

Roby, Bolar's first attorney and the one who represented him at the time of the indictment, testified that he knew nothing about any plea offer purportedly made by the government. *Id.* at p. 47. Roby maintained that while he represented Bolar, the government never offered him a plea, either verbal or written. *Id.* at p. 47. Roby further stated that at no time did Bolar ever suggest to him that Bolar was guilty of any criminality and that he would like to seek a plea deal. *Id.* Like Shepherd, he stated that the government was interested in Bolar's cooperation but added nothing of substantive value to the Court's consideration of the existence of the plea offer. *Id.* at pp. 40-42.

### 3.     Marion Floyd

Marion Floyd, Bolar's trial counsel and his attorney at the time that he alleges that the government offered him a plea, directly testified that the government did not formally make any plea offer. "There was never any hard and fast exchange. What [the government] said, again, the government would reward those who cooperated." *Id.* at p. 79. That the government sought Bolar's cooperation is again uncontested and irrelevant. More pertinent to the Court's consideration of whether Bolar has met his burden of establishing that the plea offer was made is the testimony of Floyd, which unequivocally contradicts Bolar's claim.

> FLOYD: We talked about the types of charges that Mr. Bolar had. While [the government] never used the exact terms, I boiled it down to what I thought were substantive counts versus the failure to file [income tax returns counts].

*Id.*

> FLOYD: [The government] didn't come in and say, specifically, 'one substantive, one tax, that's it. I am going to recommend a sentence.' Nothing like that was said. It was a general meeting about the types of plea agreements that were available to the government.

*Id.* at p. 81.

> FRIEL: With respect to your representation of Mr. Bolar, was there ever a point where a formal plea offer was made to you as counsel for Jonathan Bolar by the United States Attorney's Office?
> FLOYD: There was never such a point.

*Id.* at p. 123.

Bolar introduced an e-mail in which Floyd references an "original deal." Def.'s Ex. 1. That e-mail provided in full:

> I spoke to Matt Coman yesterday via telephone. In our spirited conversation, I told him that you are interested in a deal wherein you plead to the tax cases only. In exchange for that deal, I told him that you have information that will make the current Jefferson Parish cases look like "kindergarten play."

10

>He was amused with my offer, but refused. However, if you choose, we will ask his supervisors if the original deal – one honest services fraud felony count and one tax count – is still available.

*Id.* When questioned, Floyd denied that the e-mail referred to an original formal plea offer; rather, he explained that he was referencing his own beliefs about what sort of deal might be possible based on a meeting with the government that he and Bolar had attended. *Id.* at pp. 99-101. Floyd continued, explaining that "[t]o put the email in context, the discussion between me and Mr. Bolar, he did not want to plead to anything." *Id.* at p. 108. Bolar's reluctance to accept responsibility foreclosed any possibility of the government offering a formal plea offer, much less having that plea declined at the advice of his attorney. Indeed, Floyd felt that Bolar was making a mistake in going to trial.

>FAWER: Did you recommend his acceptance [of responsibility]?
>FLOYD: Yes.

*Id.* at p. 108.

>FAWER: Did you ever advise him not to plead guilty, and in fact, to take this case to trial?
>FLOYD: Absolutely not.

*Id.* at 111. Floyd's belief that Bolar's best course of action was to accept responsibility and plead guilty never wavered.

>FLOYD: My thing is when we were talking about the calculation, what his exposure was, pleading versus going to trial, I thought it was an incentive to say, "This is what your exposure is. Why not take the plea? Literally from Day 1, the meeting when we left FBI headquarters, all the way to the end, that is what I thought was best for Mr. Bolar. That's what Mr. Bolar should have done.

*Id.* at 111.

Floyd's testimony stands in stark contrast to Bolar's and his wife's – the only two sources of any evidence at all that a formal plea offer was made. The government's affidavits, both outlined

11

below, support Floyd's testimony.

### 4.     The Government

The government has submitted declarations by Harper and Floyd to the effect that "no 12-18 month plea deal, and indeed no plea offer whatsoever, was made or communicated to Bolar, who was determined to go to trial and had no interest in cooperation." Doc. #179-1 at ¶6; *see also* Doc. # 179-1 at ¶¶4, 8 ("I did not conduct plea negotiations with Bolar or his counsel. . . . I do not recall any discussions among members of that trial team of a proposed plea offer by the government, much less any negotiated plea agreement."); Doc. #179-2 at ¶6 ("I did not receive a plea offer . . . . There were no plea negotiations because Mr. Bolar was adamant that he wanted to go to trial."). Moreover, Harper's Declaration notes that, "[i]n view of my 30 years as an Assistant United States Attorney practicing in the Eastern District of Louisiana, I consider it highly improbable that either my Office would have agreed to propose, or a United States District Judge would have agreed to accept" such a plea offer. Doc. #179-1 at ¶9.

### 5.     Jonathan Bolar

As stated above, Bolar's testimony is in direct conflict with that of his trial attorney and that which the government has sworn to be true. His assertion that he was, in fact, formally offered a plea agreement with a term of imprisonment of 18 to 24 months is not supported by the majority of the testimony. While Bolar testified that the government "told him to look at Ellenese Brooks-Sims" when considering whether to cooperate with it, Bolar ultimately admitted during the hearing that the term of 18 to 24 months was actually a range that he learned of after he had been convicted at trial.

Transcript, 1/9/15 at pp. 61-66.[3] This term of imprisonment was never mentioned or offered to Bolar by a government attorney.

In most, if not all, cases based on a *Lafler* challenge, the fact of the plea offer is not in question. However, that is not the case here. That Bolar and his wife – the only witnesses with a strong interest in Bolar's eventual release – offer the only claim of a plea agreement is strong evidence of the falsity of the assertion that it did exist, especially considering the testimony and evidence of other witnesses. Indeed, ***what is clear*** from the testimony is that each time Bolar approached the government with what appeared to be a plea offer, the government refused. *Id.* at p. 39; Def.'s Ex. 1.

With respect to Bolar's testimony, the Court discounts most of it. Bolar has a strong incentive in his ultimate release from prison, and the Court finds that this tainted his testimony. Bolar has a history, both at trial and before this Court, of lying and getting others to lie to suit his needs: Bolar's own witness at trial conceded in her testimony that Bolar had told her to lie to the Grand Jury and tried to get her to lie to the trial jury. *See* Reasons for Sentence, Doc. #131 at p. 2-3 ("Not only was your own testimony in this case replete with blatant lies, but you attempted to convince Adonis Favorite to conceal your criminal conduct and assist you in shielding the truth from investigators as well as the jury in this case."). Accordingly, the Court can not simply accept Bolar's fact-of-the-matter assertion that the government offered him a plea, especially given that each time that he approached the government, it rebuffed any offer of a plea.

---

[3] Ellenese Brooks-Sims was not sentenced until after Bolar was convicted. Her sentence was thus unknown at the time that the government allegedly told him to look at her as an example of a defendant who cooperated with the government.

### 6.    **Karen Bolar**

Karen Bolar, Jonathan Bolar's wife, submitted a sworn affidavit in Bolar's original Motion to Vacate pursuant to §2255. [Doc. #166]. In that affidavit, Karen Bolar made no mention of anything to which she testified at the evidentiary hearing. Important to the Court's evaluation of her credibility and whether her testimony amounts to a recent contrivance, Karen Bolar agreed that the sworn affidavit included the facts that would have been helpful to Bolar had they been known at the time of his trial. Transcript, 1/9/15 at p. 99. In short, the Court finds that Karen Bolar testified in a manner consistent with someone seeking the release from prison of a loved one. This Court simply can not give credence to what appears to it to be after-the-fact rationale.

### 7.    **Analysis of Testimony**

Weighing the testimony and the credibility of the witnesses, the Court gives controlling weight to the testimony of Roby and Floyd and the affidavit of Harper[4] and finds that the government never formally offered Bolar a plea, either verbal or written. While Bolar contends that he and the government were "involved in plea negotiations," that is of no moment. The majority of the testimony reveals discussions between Bolar and the government with regard to potential cooperation – a fact conceded by the government – and even had the government mentioned any potential term of imprisonment, the simple fact of the matter is that it never formally offered him any plea.

---

[4] The Court accords lesser weight to the affidavit of Harper than to the live testimony at the evidentiary hearing, as is the practice in federal courts. *See United States v. Riedman*, No. 11-CR-6083, 2014 WL 713552, at *16 (W.D.N.Y. Feb. 18, 2014). Notwithstanding this weight, the Court notes that the affidavit still supports the testimony of Floyd, and Bolar could have easily subpoenaed Harper to testify at the hearing, should he have wished to cross-examine him. The government dooes not have the burden here. Moreover, the Court notes that Bolar failed to object to the government's offer of the affidavit at the evidentiary hearing. Transcript, 12/16/14 at p. 4.

Bolar maintains that the rule in this circuit dates back to the en banc decision in *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978) (en banc). The Court recognizes that the *Robertson* court held that "plea negotiations . . . contemplate a bargaining process, a mutuality of advantage, and a mutuality of disadvantage. That is, the government and the accused both seek a concession for a concession, a quid pro quo. The accused contemplates entering a plea to obtain a concession from the government. The government contemplates some concession to obtain the accused's plea." *Id.* at 1365-66 (internal quotations and citations omitted). According to the *Robertson* court and Bolar, courts must look at two factors to determine whether that bargaining process exists: the subjective belief of the defendant and the reasonableness of that belief under the totality of circumstances. *Id.* at 1366.

But *Robertson* is inapplicable to the present case, and its test is not determinative of the Court's finding. In *Robertson*, the en banc Fifth Circuit was called upon to "determine whether certain admissions made by appellant-defendant, Andrew Jackson Robertson, during a parking lot conversation he had with a confederate and two agents of the Drug Enforcement Administration, were made in the course of plea negotiations, therefore, rendering the admissions inadmissible" under Federal Rule of Evidence 410, which controls the admissibility or inadmissibility of statements made during plea discussion. *Id.* at 1358. That is a far cry from the factual circumstances here. Whether plea discussions occurred here is of no moment. What matters here is not whether Bolar and the government engaged in plea negotiations – or whether Bolar subjectively believed that they did – but whether the government offered Bolar a plea that would have been presented to the District Court. After weighing the testimony and the credibility of the witnesses, this Court has found that that did not happen. Accordingly, Bolar can not establish the

15

first prong of the *Lafler* analysis.  132 S.Ct. at 1385.  This claim fails.

        **C.**        **The Second Ineffective-Assistance-of-Counsel Claim**

Under this claim, Bolar maintains that he received ineffective assistance of counsel when Floyd failed to correctly advise Bolar relative to his sentencing exposure.  In *United States v. Grammas*, the Fifth Circuit stated as follows:

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland.*  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court.

376 F.3d 433, 436 (5th Cir. 2004) (quoting *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir.1995)) (internal quotation marks omitted). The court explained that "any additional time in prison [as a result of counsel's error] has constitutional significance," and that the inquiry whether a defendant would have received a lesser sentence absent the error contains two prongs.  *Id.* at 438. First, the court must inquire whether it was "reasonably probable that [the defendant's] decision to plead guilty would have been different had he been properly counseled a[s] to his potential punishment." *Id.* Second, the court must determine "whether a guilty plea would have indeed reduced [the defendant's] sentence." *Id.* The *Grammas* court left both of these factual determinations for the district court to make upon remand.

Here, the Court finds that it was not reasonably probable that Bolar's decision whether to plead guilty would have been different had he been properly counseled as to his potential exposure under the Sentencing Guidelines.  Given the testimony at the evidentiary hearing, Bolar has never indicated that he is guilty of any of the felonies with which he was charged.  In the course of the government's cross examination, Bolar denied each and every substantive offense of which he was convicted. He was repeatedly asked whether he committed extortion or wire fraud or any other

16

malfeasance while in office, including bribery or any offense that could reasonably be interpreted as being a criminal offense, and he repeatedly maintained his innocence. Transcript, 1/9/15 at pp. 56-59. Bolar also later reiterated this when he was confronted with the fact that he has never told anyone that he was guilty of the offenses.

> BOLAR: When I went to trial I didn't – when I went to trial, I maintained my innocence, that's correct.
> FRIEL: Right. As you do today?
> BOLAR: Yes.

*Id.* at p. 81. As the government elicited from each witness at the evidentiary hearing, at no point prior to the filing of his motion to vacate did Bolar indicate to anyone that he was in fact guilty of the underlying offenses or that he actually wished to plead guilty.

> FRIEL: With respect to the substantive counts in the case, and by that I mean the six lead charges, which were extortion and wire fraud, was there ever a point that Mr. Bolar expressed to you his guilt of those offenses?
> FLOYD: No.

*Id.* at p. 130. Without a full admission of actual guilt, Bolar would not and could not have been offered any accommodation on a guilty plea, much less any form of an assurance that his sentence would have been 18 to 24 months. Accordingly, there is no indication from the evidence adduced at the hearing that Bolar would ever have pleaded guilty. And while Bolar may protest to the contrary, his demeanor and stance at the evidentiary hearing speak volumes and support this Court's finding. Bolar never wavered from insisting that he is innocent of all of the felony charges. His protestations now that he would have accepted a plea come too little, too late.

Moreover, this Court finds that the credible testimony from the evidentiary hearing reveals that Floyd never advised Bolar that his sentencing exposure was 40 to 44 months. Contrary to the Bolar's contention, trial counsel denied that he provided Bolar with an estimated range of 40 to 44

17

months.

> FAWER: …Did you ever give him – did you do the guideline calculation?
> FLOYD: Yes, we discussed the guidelines.
> FAWER: And did you not tell him, in front of his wife and others, that your estimate, your approximation was he stood, at worst case, 40-44 months?
> FLOYD: No. How could we say 40-44 months?

*Id.* at p. 109. Indeed, Floyd admitted that he gave no guideline range to Bolar because he could not determine any specific range. *Id.* at 133. Floyd testified that he could not divine what monetary amount the jury would conclude was involved in the charges, a monetary amount that would affect any given guideline range. *Id.*

However, Floyd testified that he, in fact, informed Bolar of the maximum sentence he could face and did not shy from his assessment of the exposure Bolar faced by going to trial. Govt's Ex. 1. Trial counsel was asked:

> FRIEL: Was there ever a point where you attempted to minimize the potential criminal exposure he had; and by that I mean jail time?
> FLOYD: No.

*Id.* at p. 130.

All of this testimony reveals, and this Court finds, that Bolar can not demonstrate that he was prejudiced by any alleged deficiency of Floyd because he can not show that he would have received a "significantly less harsh" sentence. *United States v. Herrera*, 412 F.3d 577, 580-81 (5th Cir. 2005) (citing *United States v. Ridgeway*, 321 F.3d 512 (5th Cir. 2003)). As this Court has found, there is no evidence that the government offered Bolar a plea. Thus, whether he went to trial or pleaded guilty to the entire indictment, Bolar would have been subjected to the statutory maximum under the superseding indictment. *See id.* Bolar admits that Floyd sent him an e-mail in which he informed him of "decades of jail exposure," and that this referenced the statutory maximum. Govt.'s

Ex. 1; Doc. #250-1 at p. 13. Given that the government did not offer Bolar a plea and that he faced all of the charges in the superseding indictment, Bolar can not demonstrate prejudice because he faced the statutory maximum and can not establish that he would have received a "significantly less harsh" sentence. Accordingly, this claim also fails.

## IV.  Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 [Doc. #166] be DENIED with respect to the remaining ineffective-assistance-of-counsel claims.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 31st day of March, 2015.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**